J-S25032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 782 EDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002335-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: T.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 783 EDA 2021 |

Appeal from the Order Entered April 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000321-2020

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED OCTOBER 5, 2021**

E.D. (Father) appeals from the decree and order entered in the Court of Common Pleas of Philadelphia County (trial court) involuntarily terminating his parental rights to his son (Child) born in December 2016, as well as

_____

[*] Retired Senior Judge assigned to the Superior Court.

changing the Child's goal from reunification to adoption. We affirm the decree and order of the trial court.

## I.

### A.

The relevant facts and procedural history of this case are as follows. The Philadelphia Department of Human Services (DHS) became involved with the family following reports in 2016 that Child was without proper supervision because of Mother's substance abuse and mental health issues and Mother subsequently identified Father in November 2018. Child was born with opiates in his system and he was released from the hospital into the care of his maternal aunt, K.L. (Foster Mother). DHS obtained an order of protective custody for Child in October 2018 and he has resided with Foster Mother since birth. Father had periods of incarceration and pleaded guilty to unlawful restraint and false imprisonment in March 2020 for an incident involving Foster Mother. DHS filed a petition seeking termination of the parental rights of Father and Mother on September 21, 2020.[1]

### B.

The trial court held a hearing on the petition on April 4, 2021. Father was residing in New Jersey at the time with his mother and brother and DHS

---

[1] Mother's parental rights to Child were involuntary terminated and she is not a party to this appeal.

had not assessed his housing because he had cancelled a home visit. Shenise Streams (Streams) of DHS described Father's compliance with his objectives as "moderately compliant." (N.T. Hearing, 4/04/21, at 21). Father had completed a parenting class while incarcerated and enrolled in an anger management program. Father did not provide DHS with any documentation showing his participation in mental health treatment and did not submit to drug screening.

Streams testified that in the 29 months Child had been in placement, he had no unsupervised contact with Father. Father had stay-away orders in place against him on behalf of Mother and her family members, including Foster Mother. He was not permitted to visit with Child for a period of five months because of these stay-away orders. Father began weekly supervised visits with Child in February 2021 but missed two visits. Father has never contacted Streams about Child's educational needs, he has not attended any medical appointments or offered financial support, and has not served any type of caregiving or parental role. (*See id.* at 25-26). Child instead looks to Foster Mother for his daily needs, love and support and he calls her "Mom." (*Id.* at 26). Streams testified that Child "has a bond with [Foster Mother] that is unbelievable" and that he is thriving in her home. (*Id.*). She opined that termination of Father's parental rights would not cause Child irreparable harm and that a goal change to adoption was in his best interests.

Foster Mother testified that Child has frequent contact with his grandparents and other extended family members. Child interacts with essentially everyone in their family except with Mother and his limited contact with Father. (*See id.* at 48).

Father explained that he participated in parenting and anger management classes while he was incarcerated. He attempted to contact Child by making phone calls to DHS and sending letters and Christmas packages. Although Father described his efforts to contact DHS since his release from prison as "nonstop", he acknowledged that he did miss two visits. (*Id.* at 53). He explained that he wanted to change the timing of the visits because "it's detrimental to [Child's] education to come out of kindergarten and come visit me for an hour." (*Id.*). Father indicated that the visits went well, that he would like the visits to be longer, and that Child calls him "Dad." (*Id.* at 57). According to Father, he is not undergoing mental health treatment because his doctor feels it is unnecessary. Father averred that his income is sufficient to support Child, as he works as an insurance adjuster and plans to start a landscaping business.

The trial court issued a decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and (b) and an order changing Child's goal to adoption. In doing so, the trial court rejected Father's argument that his parental rights should not be terminated because he was estranged from Child because of the stay-away orders that

prohibited him from having contact with Child, noting that Father's non-compliance persisted even when the stay-away orders were no longer extant, and the actions that he took to comply with his objectives occurred after the filing of the termination petition and shortly before the termination hearing. Because Father did not occupy a parental role in Child's life and Child's parental bond is with his maternal aunt, who has cared for him his entire life, the trial court concluded that Child would not suffer irreparable harm if Father's parental rights were terminated but, instead, the Child's emotional, physical and developmental needs would be served by termination of his parental rights.

Father then timely appealed and he and the trial court complied with Rule 1925.  *See* Pa.R.A.P. 1925(a)(2)(i)-(ii).

## II.

### A.

Father challenges the trial court's termination of his parental rights to Child and the goal change to adoption.[2]  Father claims that he "completed his

---

[2] The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial

*(Footnote Continued Next Page)*

objectives and was a victim of forced estrangement from his son due to the incompetence of [DHS] and the fabrications of Mother and her family." (Father's Brief, at 24). Father also maintains that the credibility determination the trial court made in favor of Streams was unsupported by the record and constitutes a clear abuse of discretion.

Section 2511 of the Adoption Act governs termination of parental rights and requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.
>
> To affirm a termination decree, we must agree with the trial court as to any one subsection of Section 2511(a) in addition to Section 2511(b).

*Interest of S.S.*, *supra* at 685–86 (case citations omitted).

The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for

---

court's decision, however, should not be reversed merely because the record would support a different result.

*Interest of S.S.*, 252 A.3d 681, 685 (Pa. Super. 2021) (citations omitted).

termination delineated in the relevant subsections of Section 2511(a). ***See***

***Interest of A.M.***, 2021 WL 2697425 at *4 (Pa. Super. filed July 1, 2021).

In this case, the trial court terminated Father's rights pursuant to

Sections 2511(a)(1),(2),(5), (8), and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> \* \* \*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement

of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1),(2),(5), (8) and (b).

We give great deference to the trial court's credibility determinations because it observed the parties first-hand. **See In re Q.R.D.,** 214 A.3d 233, 239 (Pa. Super. 2019). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **Id.** (citation omitted). This Court has emphasized that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." **Interest of D.R.-W.**, 227 A.3d 905, 914 (Pa. Super. 2020) (citation omitted). Additionally, courts considering termination must examine whether the child is in a pre-adoptive home and whether the child shares a bond with the foster parents. **See id.** at 916.

The trial court here reasoned that termination of Father's parental rights was warranted because:

- 8 -

Father has failed to submit to [random drug screens], and we don't have evidence of mental health services nor documentation regarding treatment if any [] since the testimony reflects that Father has refused to sign releases.

Father testified that he has complied with some of the single case plan objectives. However, the Court can't entertain any compliance that took place after the filing of the termination of parental rights petition.

The testimony reflects that Father was incarcerated, released, and reincarcerated and so there is a timeframe during which his incarceration prevented him completing some of the single case plan [objectives].

However, the testimony is clear that while Father has been visiting the child is now just getting to know him and he does not have a parental role. That bond is with the maternal aunt. And the testimony of Ms. Streams described it as an unbelievable bond.

And at this point, notwithstanding the fact that this child is now four years old and has been with his maternal aunt for most of his life, the compliance for father is only moderate as well as the progress is only moderate.

It is clear to this Court that this child is loved and in a pre-adoptive home, and all of his needs are being met by his pre-adoptive parent.

It's the Court's finding that [Father] has not been a consistent resource for [Child] and no irreparable harm will be held to this Child if parental rights are terminated.

(N.T. Hearing, 4/04/21, at 75-77).

After review, the record establishes that Father falls within the ambit of Section 2511(a)(1) by failing to carry out his parental responsibilities. Child has never resided with Father due to Father's actions. There has been no unsupervised contact since Child has been in placement, and Father then

missed two recent supervised visits because he did not approve of the scheduled time. Father's inability to contact Child earlier was caused by his own violent conduct toward Mother, for which he served a term of incarceration. Further, Child has been well taken care of by Foster Mother since he was born with drugs in his system. Child and Foster Mother share a strong bond and he views her as his caretaker. Regarding Father's objection to the trial court's credibility determination in favor of Streams, the court was "free to believe all, part, or none of the evidence presented" and its findings are fully supported by the record. **In re Q.R.D., supra** at 239. We discern no abuse of discretion in the court's termination ruling.

**B.**

Father also challenges the trial court's decision to change Child's placement goal to adoption. Because our finding that termination was appropriate renders this issue moot, we affirm the order changing Child's permanency goal to adoption. **See Interest of A.M.**, **supra** at *6 (stating our decision to affirm court's termination decree necessarily renders moot its ruling changing Child's goal to adoption).

Nonetheless, even if we were to reach the merits of this issue, we would conclude that no relief is due.[3]

---

[3] We review placement goal change orders for an abuse of discretion. **See Interest of D.R.-W.**, **supra** at 917.

The Juvenile Act governs proceedings to change a child's permanent placement goal. 42 Pa.C.S. §§ 6301-6375. Trial courts must apply the following analysis:

Pursuant to 42 Pa.C.S. § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the trial court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***Interest of D.R.-W.***, ***supra*** at 917-18 (case citations omitted).

In this case, the trial court did not commit an abuse of discretion by changing Child's goal to adoption. As explained in detail, Father has taken on no role in parenting Child and has not shown initiative in being actively involved in his care. In addition, all of Child's needs are being well met by Foster Mother with whom he has resided with since his birth, and she ensures that he spends time with his grandparents and extended family. It is clear that changing the placement goal to adoption is in Child's best interests. Accordingly, for the reasons set forth in this memorandum, we affirm the termination decree and goal change order of the trial court.

Decree affirmed. Order affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/5/2021